369 F.2d 159
 REDERI A/B SOYA, as owners of the Swedish MOTOR VESSEL OTELLO, Appellant,
v.
SS GRAND GRACE, Grace Navigation Corporation, the MV JANE STOVE and Lorentzens Skibs, A/S, Appellees.
 No. 20591.
 United States Court of Appeals Ninth Circuit.
 November 29, 1966.
 
 Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., Eli Ellis, David C. Wood, of Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for appellant.
 Curtis W. Cutsforth, of King, Miller, Anderson, Nash & Yerke, Portland, Or., for appellee, Lorentzens Skibs, A/S.
 Erskine B. Wood, of Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for appellee, Grace Navigation Corp.
 Before BARNES, HAMLEY and BROWNING, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 This is an appeal in admiralty from the United States District Court for the District of Oregon. The court below had jurisdiction under 28 U.S.C. § 1333(1). Our jurisdiction is under 28 U.S.C. § 1291.
 
 
 2
 On January 19, 1964, the Swedish M/V OTELLO collided with the Liberian S/S GRAND GRACE in the Columbia River near Astoria, Oregon. The OTELLO claims that the collision was in part caused by the Norwegian M/V JANE STOVE.
 
 
 3
 The events leading up to the collision and the collision itself occurred in the middle of the afternoon when there were no restrictions on visibility. The wind was from the west, about 35 knots, with gusts to 55 or 65 knots.
 
 
 4
 At the place of the collision, the Columbia River runs approximately east-west, flowing westward to the Pacific Ocean. Thus the wind, from the west, was blowing upstream. Along the length of the Columbia River near Astoria is a recognized ship channel. The area of the river to the south of the ship channel is used as an anchorage.
 
 
 5
 As we analyze the events of January 19 we must concern ourselves with the activities of four vessels, beginning at 2:30 P.M. The OTELLO was anchored in the anchorage area south of the ship channel, with 75 fathoms of chain down, with her bow to the west, into the wind. Approximately one half mile astern of the OTELLO, i. e., to the east, upriver, the GRAND GRACE lay anchored, also with her bow to the west. Northward and slightly upstream (to the east) of the OTELLO, but still slightly south of the ship channel, was anchored the American vessel ANTINOUS. Proceeding downstream (to the west), through the general area of these vessels, was the JANE STOVE. The reason for the movement of the JANE STOVE was to secure better anchorage since in previous locations her anchor had dragged.[1]
 
 
 6
 At 2:30 P.M. on January 19, 1964, the OTELLO noticed that her own anchor was dragging. She decided to move to a new anchorage position and sounded her whistle for a pilot. There was no response. Her engines were not started until 2:40 P.M. At 3:00 P.M. she attempted to haul in her anchor, but when it was part way (45 fathoms) up, the chain caught on the bow, and the anchor was raised no more. She did not drop her second anchor. She did not attempt to use her two screws to steer the vessel. At all times she had use of her twin screws and rudder.
 
 
 7
 The wind (from the west) swung the OTELLO's bow to the starboard so that she was headed toward the north with the wind from her port. In this position she dragged past the ANTINOUS. The master of the OTELLO decided to steam north to the open water on the other side of the ship channel as soon as he had dragged past the ANTINOUS. However, the JANE STOVE was observed coming west along the southern edge of the ship channel about 100 to 120 feet east of the OTELLO, between the ANTINOUS and the OTELLO. There is a decided dispute as to how far the JANE STOVE was north of the OTELLO when the JANE STOVE was first seen, and when she crossed the OTELLO's bow. The OTELLO did not steam north, because of the possibility of collision with the JANE STOVE. She continued to drag (under the force of the wind) until, at 3:22 P.M., she collided with the GRAND GRACE, which resulted in damage to both vessels.
 
 
 8
 The owners of the OTELLO filed a libel for negligence against the GRAND GRACE and the JANE STOVE in the district court. The owners of the GRAND GRACE filed a cross libel for negligent damage to that vessel. The court found against the OTELLO on its libel and for the GRAND GRACE on its cross libel. The court awarded damages, interest, taxable costs and "litigation expenses" to the GRAND GRACE. The JANE STOVE received only "litigation expenses." The owners of the OTELLO have appealed.
 
 I. Scope of Review
 
 9
 Before we approach the merits of the controversy, we must settle the dispute between the parties as to the scope of our review. Findings of fact are not to be overturned unless clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure. This rule applies in admiralty. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). But appellant contends, in effect, that a determination on the question of negligence, however labeled, is not a finding of fact, but is a conclusion of law and so is not to be tested by the clearly erroneous rule.
 
 
 10
 No decision has been called to our attention in which it was held that a determination on the question of negligence is exclusively one of law. However, the Second Circuit has adopted the view that because the determination of that question involves first the formulation and then the application of a standard of conduct to evidentiary facts found to be established, a judge's determination on the question of negligence is not entitled to the benefit of the clearly erroneous rule in admiralty or any other type of action in which Rule 52(a) is generally applicable. See Romero v. Garcia & Diaz, Inc., 286 F.2d 347, 355-356 (2d Cir. 1961). The Second Circuit has recently held that its view in this regard is not in conflict with McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6. Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776-778 (2d Cir. 1966).
 
 
 11
 See, also, Socash v. Addison Crane Company, 120 U.S.App.D.C. 308, 346 F.2d 420, 422 (D.C.Cir. 1965), concurring opinion of Judge Bazelon.
 
 
 12
 Apparently, most if not all of the other courts of appeals deal with the question of negligence as if it were one of fact, subject to the clearly erroneous rule. See the decisions handed down in the District of Columbia, First, Fourth, Fifth, Sixth, Eighth and Tenth Circuits, collected in 5 Moore's Federal Practice, 2d ed., § 52.03, pages 2616, 2624 and 1965 supplement thereto.
 
 
 13
 This court so dealt with the question of negligence in Molitor v. American President Lines, Ltd., 343 F.2d 217, 219-220 (9th Cir. 1965). And in Pacific Tow Boat Co. v. States Marine Corp. of Delaware, 276 F.2d 745 (9th Cir. 1960), we specifically rejected the argument that a determination on the question of negligence is not subject to the clearly erroneous rule, pointing out, however, that a conclusion of law may also be involved. We there said, at page 752:
 
 
 14
 "In the McAllister case the Supreme Court dealt specifically with a `finding of fact' that the master of the ship was negligent. It was with respect to this finding that the court there held that `no greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure.' Since that decision this court has uniformly regarded determinations as to negligence made in admiralty cases as findings of fact which are not to be overturned unless clearly erroneous.[12] ([12] Albina Engine & Machine Works, Inc. v. American Mail Line, Ltd., 9 Cir., 263 F.2d 311, 314; Amerocean Steamship Co. v. Copp, 9 Cir., 245 F.2d 291, 293; City of Long Beach v. American President Lines, Ltd., 9 Cir., 223 F.2d 853, 855. The Sixth Circuit has followed the same practice. Imperial Oil, Limited v. Drlik, 6 Cir., 234 F.2d 4.)
 
 
 15
 "It is true that any determination as to negligence requires the testing of particular facts against a predetermined standard of conduct. The fixing of that standard is a jural act. To this extent a question of law is involved, and hence a conclusion of law is required, in any determination as to negligence. Nothing said in McAllister or in any of our previous decisions was intended to limit the scope of review in so far as the fixing of the applicable standard of conduct is concerned.
 
 
 16
 "The standards of conduct here applied by the trial court, as we understand them, comport fully with accepted legal principles. The findings of fact whereby those standards were given application in this case are not clearly erroneous."
 
 
 17
 In the case before us we encounter little, if any, argument to the effect that the trial court applied an impermissible standard of conduct in determining the question of negligence. The contentions and counter contentions are concerned almost exclusively with the findings concerning the movement of the vessels, the steps taken to meet the emergency which developed, the force of the wind, and like facts. Thus for all practical purposes, only questions of fact were involved in deciding whether there was negligence. As to those facts, the clearly erroneous rule has full application.
 
 
 18
 In admiralty, as in other types of cases, that rule precludes an appellate court from upsetting a trial court's factual findings unless the appellate court is left with the definite and firm conviction that a mistake has been committed. Guzman v. Pichirilo, 369 U.S. 698, 702, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962).
 
 
 19
 Appellant also argues, in effect, that, because counsel for the prevailing parties prepared the findings of fact for the court's approval, there was a violation of Supreme Court Admiralty Rule 46½. Because of this violation, appellant asserts, serious doubts are raised as to the soundness of the district court decision and that, for this reason, we should scrutinize the decision with more care than would otherwise be required.
 
 
 20
 The courts of appeals are divided on this question. There are some decisions holding that trial court adoption of proposed findings of fact constitutes an inadequate compliance with Rule 46½. See, for example, Mesle v. Kea Steamship Corporation, 260 F.2d 747, 750 (3rd Cir. 1958); The Severance, 152 F.2d 916, 918 (4th Cir. 1945). There are others holding to the contrary. See Louis Dreyfus & Cie. v. Panama Canal Company, 298 F.2d 733, 737-739 (5th Cir. 1962); Mississippi Valley Barge Line v. Cooper Terminal Company, 217 F.2d 321, 322 (7th Cir. 1954); Tanker Hygrade No. 24, Inc. v. The Dynamic, 213 F.2d 453, 456 (2d Cir. 1954). While the Ninth Circuit has not dealt with the problem with specific reference to Rule 46½, we did say, in Molitor v. American President Lines, Ltd., supra, 343 F.2d at 219: "It is immaterial that counsel for the prevailing party, at the request of the court, prepared the findings."
 
 
 21
 The record does not support appellant's assertion that the trial court made no independent analysis of the facts. We hold that there was no failure to comply with Rule 46½ and that, under the circumstances of this case, the findings of fact are not suspect because they were drafted by counsel for the prevailing parties.
 
 II. The Negligence of the OTELLO
 
 22
 Rather than enumerate the items of evidence, substantial in amount, to sustain the trial court's finding that the OTELLO was negligent, we will examine a few of the more obvious points.
 
 
 23
 In Finding of Fact 16(i) the trial court found the OTELLO negligent in failing to use her engines to avoid the collision. The appellant offers no acceptable explanation for this failure. OTELLO seems to assert that she could not use her engines because the JANE STOVE was across her bow. She was not there for almost an hour before the collision. Assuming, arguendo, that the JANE STOVE was so positioned, there is no explanation of why the OTELLO did not turn to port and use her engines to move her away from the GRAND GRACE to the west, that is, on a course parallel to that of the JANE STOVE. This course would have taken her back to the anchorage from which she had dragged. But it would have avoided the collision with the GRAND GRACE.
 
 
 24
 In Finding of Fact 16(h) the trial court found OTELLO negligent in failing to keep a proper lookout. This conclusion seems almost obvious. The GRAND GRACE is over 441 feet long and over 7,000 tons. If one were looking, one would see her. It should be noted that the OTELLO was dragging at a rate of about one-half mile per hour (Appellant's Reply Brief, p. 7) for more than 50 minutes. The master of the OTELLO, it seems, was informed of the approach to the GRAND GRACE by her radio officer whose function was not to keep a lookout. He was on the port side of the bridge "to just look around for interest," not at the captain's direction. (T.R. 649.) The regular lookout had been sent to the chain locker. No evidence has been brought to our attention of any lookout other than the fortuitous interest of the radio officer, who was at the same time running errands for the captain. (R.T. 647.) This does not meet the standards for a lookout. The Koyei Maru, 96 F.2d 652 (9th Cir. 1938), Oil Transfer Corp. v. Diesel Tanker F. A. Verndon, Inc., 192 F.Supp. 245 (S.D. N.Y. 1960). See also, The Ariadne, 13 Wall. 475, 80 U.S. 475, 20 L.Ed. 542 (1871).
 
 
 25
 This and other substantial evidence supports the trial court's finding of negligence on the part of the OTELLO, and that finding is not clearly erroneous.
 
 III. The Negligence of the GRAND GRACE
 
 26
 OTELLO's claim of negligence by the GRAND GRACE is based entirely on the idea that the GRAND GRACE should have moved when she saw the OTELLO drifting into her. If the GRAND GRACE had become aware of the imminent danger in time to act, perhaps it would have been negligence not to move. But the evidence is clear that the GRAND GRACE did not have time to act. The time was "one minute" (T.R. 429), "a matter of seconds" (T.R. 480), "only a few seconds" (T.R. 492) or "a couple of minutes" (T.R. 1076). OTELLO's master even admitted that the GRAND GRACE was powerless to avoid the collision. (T.R. 360.)
 
 
 27
 The trial court's finding that the GRAND GRACE was not negligent is correct.
 
 IV. The Negligence of the JANE STOVE
 
 28
 There is conflict in the testimony as to whether or not the JANE STOVE was in the ship channel and as to how close she was to the OTELLO when she passed. (See note 1, supra.) It would be pointless for us to analyze here the evidence in regard to those points, because our only function is to test the findings by the clearly erroneous standard. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). There is evidence to support the finding that the JANE STOVE was not negligent, and we cannot say that it was error.
 
 V. The Litigation Expenses
 
 29
 In addition to damages, interest and certain statutory costs, the trial court awarded the GRAND GRACE and the JANE STOVE amounts for "litigation expenses," to which the OTELLO objects. Most of the elements were taxable as costs, and we see no need to alter the judgment with respect to them. However, we feel that the long distance telephone calls were improperly included. The mere fact that some of these calls were "primarily regarding depositions" does not make them taxable. Also, we feel that the damage surveys were not properly taxable as costs. Apparently they were merely initial inquiries with regard to the issue of compensable damages. Investigatory expenses which are incident to preparation for trial should not be taxed as costs. Clapper v. Original Tractor Cab Co., 165 F.Supp. 565, 599 (S.D. Ind. 1958), modified in a part not here material, 270 F.2d 616 (7th Cir. 1959), cert. denied, 361 U.S. 967, 80 S.Ct. 588, 4 L.Ed.2d. 547 (1960), Hope Basket Co. v. Product Advancement Corp., 104 F.Supp. 444 (W.D. Mich. 1952), Standard Brands, Inc. v. National Grain Yeast Corp., 36 F.Supp. 60, 62 (D. N.J. 1940).
 
 
 30
 Because of these elements, the litigation expenses element of the judgment in favor of the GRAND GRACE will be reduced by $863.24 to $931.88; that element of the judgment in favor of the JANE STOVE will be reduced by $650.00 to $1,759.89.
 
 VI. Damages Under Rule 24
 
 31
 Under Rule 24(2) of the rules of this court, we can assess damages for prosecuting an appeal where the purpose of the appeal is to delay the final termination of the litigation. This rule was designed to dissuade parties from prosecuting spurious appeals with no intent of seeking review based on the merits of the case. Where delay is the sole purpose, the attorney does a disservice both to this court and to his client, and a penalty should be ordered in such a case.
 
 
 32
 The rule, however, was never designed to inhibit a party from seeking appellate review when he honestly believes that there is a question to be resolved on appeal. The weakness of his case may indicate his intention, but it is seldom conclusive. The expense and effort of prosecuting the appeal are rarely spent merely for delay, and the asserted purpose of the delay should be brought before the court before Rule 24 damages are allowed.
 
 
 33
 We cannot say that appellant's sole purpose in prosecuting this appeal was delay. We decline to allow damages under Rule 24.
 
 
 34
 The judgment, modified as indicated above, is affirmed.
 
 
 
 Notes:
 
 
 [1]
 There exists in the record a wide difference in the estimated distances between the various vessels at various times
 Thus, the crew of the OTELLO place the anchored ANTINOUS as 500 feet from the anchored OTELLO, and south of the main ship channel. The ANTINOUS' captain and first mate place the distance, based on bearings made, as in the middle of the main ship channel, and at least 1200 feet distant from the OTELLO.
 Again, appellant urges that the GRAND GRACE was one quarter to one half mile astern of the OTELLO, while the anchor bearings made by the GRAND GRACE'S officers indicate it was at least 0.6 miles or 3600 feet up river.
 Likewise, the appellant urges a heavier wind in fact existed than that shown by the official Weather Bureau reports (Exs. 42, 118).
 The appellant states that "shortly" after she noticed the dragging anchor she put her engines on "standby". They were actually put on standby twelve minutes later (2:42 P.M.), and first used twenty-four minutes later, at 2:54 P.M.
 Just as the witnesses for the OTELLO seem inclined to exaggerate, so does the pilot (Quinn) of the JANE STOVE. We thus face a conflict of testimony on a point of extreme importance.
 The pilot of the JANE STOVE (Quinn) testified he was actually traveling within the ship channel (T.R. 293), and was 300 yards off the OTELLO's bow when he passed her (T.R. 300). Lindstrom, the first mate of the OTELLO, estimated there existed 50 to 70 feet between the bow of the OTELLO and the JANE STOVE.
 It would have been better for this reviewing court had findings been made on such disputed factual matter. Excellent and detailed findings were made on the respective conduct of the OTELLO and the GRAND GRACE in support of the court's interlocutory decree (C.T. 75-81).
 We hold, however, that the lack of a specific finding on the factual dispute on the distance between the OTELLO and the JANE STOVE when the latter crossed the OTELLO's bow, will not require us to remand. It is clear from the Memorandum Decision of the trial judge (C.T. 73-74) that he either determined the JANE STOVE was not traveling west 50 to 70 feet north of the bow of the OTELLO, or if she was, that such act was not negligence; and further that, it was the careless and negligent conduct of the OTELLO's captain and crew which proximately caused the accident. OTELLO's "evidence does not rise to the dignity of casting a burden of proof on either of the respondents," said the court (C.T. 74, ll. 7-9). In this we agree.