470 F.2d 137
 Nadine A. McCAULEY, as surviving widow of James P. McCauley,
deceased, Appellee,
v.
UNITED STATES of America, Appellant.
Shirley Diane STOKE, surviving widow of Richard Clare Stoke
II, Appellee,
v.
UNITED STATES of America, Appellant.
 Nos. 72-1034, 72-1035.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 31, 1972.
 
 William Kanter (argued), Walter H. Fleischer, Washington, D. C., William C. Smitherman, U. S. Atty., Phoenix, Ariz., Harlington Wood, Jr., L. Patrick Gray, III, Asst. Attys. Gen., Washington, D. C., for appellant.
 Edward C. Rapp (argued), of Tupper, Rapp, Salcito & Schlosser, P. A., Phoenix, Ariz., Robert J. Welliever (argued), of Welliever & Smith, Lee Galusha and Gerald F. Sullivan, Phoenix, Ariz., for appellees.
 Before DUNIWAY, CARTER, and GOODWIN, Circuit Judges.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 The government has appealed in these consolidated federal-tort-claims actions in which two widows seek damages arising out of a fatal collision between an airplane and an unmarked government power line.
 
 
 2
 Pilot and passenger were killed on a pleasure flight when their light plane encountered transmission lines suspended over the southeastern end of Lake Havasu. One other plane had hit the lines since their construction in 1949. The wire which the plane hit was about 94 feet above the water at its lowest point.
 
 
 3
 The trial court found, on conflicting evidence, that the government was negligent in failing to mark the lines so as to make them visible to pilots of aircraft. While the government has argued that it was not negligent, we are satisfied that this question was properly resolved by the trier of fact. There is no basis for reversal on this point.
 
 
 4
 The government's main argument is that the pilot's widow cannot recover because the deceased pilot was negligent as a matter of law in flying in violation of 14 C.F.R. Sec. 91.79 (1966), which was then in force. This regulation provides:
 
 
 5
 "Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
 
 
 6
 "* * * * *
 
 
 7
 "(c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure."
 
 
 8
 Assuming, without deciding, that under Arizona law a pilot who flies in violation of federal regulations is negligent as a matter of law, the question of proximate cause remains one for the court or jury. See J. H. Welch & Son Contracting Co. v. Gardner, 96 Ariz. 95, 392 P.2d 567, 570 (1964). Since it was undisputed that the plane flew below 500 feet while in the vicinity of a pleasure boat on the lake, a regulation intended to protect boats from annoying overflights may indeed have been violated. However the trier of fact had the right to consider whether this negligence, if it was negligence, with reference to a boat, was the proximate cause of the subsequent collision between the aircraft and an unmarked power line suspended 94 feet above open water. We cannot say that the trier of fact was clearly in error in finding that it was not. United States v. State of Washington, 351 F.2d 913, 915 (9th Cir. 1965); El Paso Natural Gas Co. v. United States, 343 F.2d 145, 147 (9th Cir. 1965).
 
 
 9
 The government has also contended that if the pilot was not negligent as a matter of law the evidence of negligence as a matter of fact is so strong that the trial court's contrary finding is clearly erroneous. This contention, like the companion argument that there was negligence as a matter of law, must fail because the question of proximate cause was clearly a question for the trier of fact. There is no basis for saying that the trial court's ultimate findings on liability were clearly erroneous.
 
 
 10
 The government also challenges the measure of damages, contending, first, that certain computations relating to projected earnings were in error. The trial court's evaluation of the expert testimony and other evidence on damages was not clearly erroneous, and, accordingly, we will not re-examine the calculations.
 
 
 11
 Finally, the government urges, as it has in a number of previous cases, that it is error to calculate future loss of income in wrongful-death cases without taking into account the element of future income taxes. See, e. g., United States v. Furumizo, 381 F.2d 965 (9th Cir. 1967); United States v. Becker, 378 F.2d 319 (9th Cir. 1967). Income taxes, like inflation and attorney fees, are facts of life. Courts in various jurisdictions follow a variety of rules in keeping from juries, or in explaining to them, the consequences of taxes, attorney fees, insurance, and other matters that might appear to an economist to be relevant in considering proper compensation. Counsel have not cited compelling reasons for adopting a fixed rule for all cases.
 
 
 12
 In suits under the Federal Tort Claims Act, the measure of damages follows the local law. E. g., United States v. Becker, 378 F.2d at 324. We assume that in the case at bar the experienced trial judge was able to evaluate, as required by Arizona law, the whole of the evidence and reach a reasonable decision. We decline to impose upon the district courts a dogmatic rule with reference to taxes, important as they may be, in calculating what is reasonable. See United States v. Furumizo, 381 F.2d at 971.
 
 
 13
 Affirmed.