587 F.2d 991
 Helen E. MILLER, Administratrix of the Estate of Michael Lee
Reilly, Plaintiff-Cross-Appellant,
v.
UNITED STATES of America, Defendant and Third Party Plaintiff-Appellee,
v.
David A. MILLER, Third Party Defendant-Appellee.
 Nos. 77-3180, 77-3116.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 11, 1978.
 
 O. Nelson Parrish, James A. Parrish, Fairbanks, Alaska, for plaintiff-cross-appellant.
 Thomas G. Wilson, Mark H. Gallant, Washington, D. C., for defendant and third party plaintiff-appellee.
 On appeal from the United States District Court for the District of Alaska.
 Before WRIGHT, GOODWIN and ANDERSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Michael Lee Reilly was killed when the airplane in which he was riding as a passenger crashed at the Fairbanks International Airport. His mother, Helen E. Miller (Miller-Appellee) brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., claiming that the air traffic controller, an employee of the United States, had been negligent. The United States filed a third-party complaint against David A. Miller (Miller-pilot), the decedent's stepfather, who was the pilot of the airplane. The district judge, sitting without a jury, entered judgment in favor of Helen E. Miller, finding the United States and David A. Miller each fifty percent negligent in causing the death of Michael Lee Reilly. Both the United States and Helen E. Miller have appealed, raising various assignments of error.
 
 FACTUAL BACKGROUND
 
 2
 On April 4, 1971, David A. Miller, a licensed and experienced pilot, was performing a series of touch-and-go landings at Fairbanks International Airport with his stepson, Michael Lee Reilly, riding with him as a passenger.[1] He was flying a two-seater Piper Colt aircraft. On April 4, the weather was relatively clear with visibility for eighty miles.
 
 
 3
 Prior to the crash, Miller contacted the control tower and was advised by Audree Knutzen, an air traffic controller at Fairbanks, that an L100 Hercules aircraft was departing the runway. Miller asked for authorization to lose time by executing a 360o turn. Knutzen was unable to approve the request because of following traffic, but told Miller he could make an extended approach pattern in order to lose time, which Miller agreed to do. Knutzen then advised Miller: "Caution, wake turbulence." Miller flew through the extended approach and landed 4000 to 5000 feet down the runway approximately two minutes after the Hercules had departed. Miller rolled approximately 300 to 400 feet down the runway before becoming airborne again. Shortly after the Miller airplane became airborne, it crashed.
 
 
 4
 The district judge found that the wake turbulence[2] from the departing Hercules was the cause of the crash. Miller was found to be negligent in the manner in which he was operating the airplane, and Knutzen, the controller, was negligent in failing to adequately warn Miller.
 
 QUESTIONS PRESENTED
 
 5
 On appeal, the government raised the following assignments of error: (1) The district court's finding that the crash resulted from wake turbulence was clearly erroneous; (2) The district court erred in finding that the air traffic controller had violated her standard of care toward the pilot and passenger; (3) The district court's award of attorney's fees against the government was improper. Appellee Miller only raised one assignment of error: the district court erred in reducing the damage award by the probable amount of future income taxes. Due to our resolution of the government's second assignment of error, we do not address either the government's first question or the question raised by appellee Miller.
 
 STANDARD OF REVIEW
 
 6
 Prior to reviewing the judgment of the district court finding the United States negligent, this court must first answer the question of what standard of review should be applied. Rederi A/B Soya v. SS Grand Grace,369 F.2d 159, 162 (9th Cir. 1966). In doing so, it is necessary to involve ourselves in the dichotomy of sorting questions of law from questions of fact, a problem which courts have struggled with for over a century. See In re Hygrade Envelope Corp., 366 F.2d 584, 588 (2d Cir. 1966). Initially, we note that judgments under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., are reviewed under a federal standard of review rather than under a state standard. Felder v. United States, 543 F.2d 657, 664 (9th Cir. 1976).
 
 
 7
 An appellate court can freely review questions of law. Felder v. United States, 543 F.2d 657, 663 (9th Cir. 1976); and See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 526, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). However, questions of fact, whether determined by the judge or a jury, are accorded much more deference, and are only overturned on review when clearly erroneous. Fed.R.Civ.P. 52(a). The Supreme Court has described the clearly erroneous standard as meaning:
 
 
 8
 "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
 
 
 9
 United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Accord Felder v. United States, 543 F.2d 657, 663 (9th Cir. 1976); Admiral Towing Co. v. Woolen, 290 F.2d 641, 646 fn. 3 (9th Cir. 1961).
 
 
 10
 A determination of negligence is generally recognized as a mixed question of law and fact. United States v. Babbs, 483 F.2d 308, 311 (9th Cir. 1973). Yet, on the basis of McAllister v. United States, 348 U.S. 19, 20-21, 75 S.Ct. 6, 99 L.Ed. 20 (1954), the appellate review of a finding of negligence is governed by the clearly erroneous standard. This is the rule of this circuit, United States v. Babbs, 483 F.2d 308, 311 (9th Cir. 1973), and it is followed in all of the other circuits, with the exception of the Second. 9 Wright and Miller, Federal Practice and Procedure (1971), § 2590.
 
 
 11
 Even though a finding of negligence will not be overturned unless "clearly erroneous," this court is not so limited when it is called upon to review the question of whether the trial court applied the proper standard of conduct which resulted in the finding of negligence. As this court said in Pacific Tow Boat Co. v. States Marine Corp. of Delaware, 276 F.2d 745, 752 (9th Cir. 1960):
 
 
 12
 "It is true that any determination as to negligence requires the testing of particular facts against a predetermined standard of conduct. The fixing of that standard is a jural act. To this extent a question of law is involved, and hence a conclusion of law is required, in any determination as to negligence. Nothing said in McAllister or in any of our previous decisions was intended to limit the scope of review in so far as the fixing of the applicable standard of conduct is concerned."
 
 
 13
 Accord United States v. DeCamp, 478 F.2d 1188, 1193 (9th Cir. 1973), Cert. denied, 414 U.S. 924, 94 S.Ct. 232, 38 L.Ed.2d 158; Rederi A/B Soya v. SS Grand Grace, 369 F.2d 159, 163 (9th Cir. 1966); and, See Stranahan v. A/S Atlantica & Tinfos Papirfabrik, 471 F.2d 369, 372 (9th Cir. 1972). Our review of what standard of conduct should have been utilized in a negligence finding is a legal question. The actual application of the legal standard to the facts of the case (i. e., the determination on the ultimate question of negligence) is reviewed under the "clearly erroneous" standard. It follows in most cases where the trial judge has erred in determining what standard of conduct should have been used in a negligence determination, that the ultimate finding as to negligence does not pass muster under the "clearly erroneous" test.
 
 
 14
 In the present case, our review of whether the trial judge correctly interpreted the standard of conduct required of air traffic controllers and when there is a duty to give an additional warning therefore involves a legal question. United States v. DeCamp, 478 F.2d 1188, 1193 (9th Cir. 1973); and See Stranahan v. A/S Atlantica & Tinfos Papirfabrik, 471 F.2d 369, 373 (9th Cir. 1973), Cert. denied, 412 U.S. 906, 93 S.Ct. 2293, 36 L.Ed.2d 971. The decision of the district court will be overturned if we find that the application of the wrong standard of conduct to the facts of the case resulted in a judgment which was clearly erroneous.
 
 CONTROLLER'S STANDARD OF CARE
 
 15
 An air traffic controller is held to be a standard of due care for the safe conduct of aircraft and for the safety of airplane passengers which is concurrent with the duty of the pilot. Spaulding v. United States, 455 F.2d 222, 226 (9th Cir. 1972). The trial judge found that Knutzen had violated this duty by failing to give a second warning to the Miller aircraft about the possibility of wake turbulence, relying on this court's prior decision in United States v. Furumizo, 381 F.2d 965 (9th Cir. 1967). In order to determine the controller's standard of care, it is necessary to closely examine Furumizo and other decisions by this court.
 
 
 16
 In Furumizo, the controller observed the student pilot begin to take off toward the possible wake turbulence immediately after the controller had issued the cautionary warning.[3] This court held that in that case it had been negligent of the controller not to issue a second warning. This was supported by the following rationale:
 
 
 17
 "The Danger was Extreme and (the controllers) knew it . . . (The controllers') job requires that they act in the interest of safety, and it would be strange indeed if that overriding duty did not include an obligation to seek, by appropriate instructions, to warn a pilot who is starting to take off when it is apparent to them that he will encounter a Severe hazard . . . although a first warning is given, it becomes clear to the controller that another warning is needed and none is given." (emphasis added)
 
 
 18
 381 F.2d at 968. Furumizo did not establish a per se rule that a controller was to issue two warnings any time there was wake turbulence. The duty to give a second warning arose when the controller has knowledge that the airplane faces an extreme danger or severe hazard from wake turbulence, such as when the controller observes the plane begin to take off toward the turbulence immediately after he or she has given a cautionary warning. This additional duty which arises with the knowledge of the extreme danger or severe hazard has been appropriately described as an "emergency situation." See Hamilton v. United States, 497 F.2d 370, 375 (9th Cir. 1974).
 
 
 19
 In the present case there was no finding that the controller knew that the Miller aircraft faced an extreme danger or severe hazard (emergency situation). Nor, on the facts of the present case, would we be able to supply such a finding. Miller, an experienced pilot, was advised of the departure of the Hercules from the runway. As an experienced pilot this should have put him on notice about any possible wake turbulence. After this, the controller expressly warned Miller about wake turbulence. This suggests that Miller may have had two warnings. Additionally, Miller landed approximately two minutes after the Hercules departed. He did not begin moving toward the turbulence as the pilot in Furumizo did immediately after the cautionary warning.
 
 
 20
 There are other considerations which should also be taken into account in determining the standard of conduct required of a controller. In Spaulding v. United States, 455 F.2d 222, 227 (9th Cir. 1972), we said that "(i)t is not negligence not to repeat information already given." And, in Hamilton v. United States, 497 F.2d 370, 374 (9th Cir. 1974), we noted that "under VFR conditions, ultimate responsibility for the safe operation of aircraft rests with the pilots, regardless of the air traffic clearance."[4] While we do not believe that either of these statements should be interpreted as establishing per se rules either, they do have application in determining the controller's standard of care.
 
 
 21
 We hold that the trial judge erred in his determination of the controller's standard of conduct and the duty to give the additional warning. Furumizo establishes the controller's standard of conduct in the narrow area of emergency situations. It does not establish a broad duty always to be followed by controllers. Additionally, any determination of the controller's standard of conduct should also consider the factors as set forth in Hamilton and Spaulding, supra. Therefore, the finding by the trial judge that the United States was negligent was clearly erroneous in view of the incorrect standard of conduct which was required of the controller.
 
 
 22
 AWARD OF ATTORNEYS' FEES AGAINST THE UNITED STATES
 
 
 23
 After counsel for the government made a motion for summary judgment, the trial judge ordered the government to pay $500.00 to each of the opposing counsel as a sanction for making an untimely motion. The government's motion was apparently made at the request of the trial judge.
 
 
 24
 On appeal, the government contends that this award was erroneous. Appellee Miller avoids addressing the merits of this question and acknowledges that the issue may be "entirely moot."
 
 
 25
 Attorneys' fees generally are not awardable against the United States except where they are expressly provided by statute. Alyeska Pipeline Serv. v. Wilderness Soc., 421 U.S. 240, 267-268, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There is no statute which would support such an award on the facts of this case. We therefore reverse the district court's award of attorneys' fees against the United States.
 
 
 26
 The judgment of the district court against the United States is REVERSED.
 
 
 
 [1]
 This explanation of the facts surrounding the crash of the Miller aircraft is taken from the findings of fact made by the district judge, which appear at pages 79 through 81 of the Court Record
 
 
 [2]
 Wake turbulence or wing-tip vortices are funnel-shaped masses of air current which move in a circular motion from the wing tips of an airplane during flight. The vortex behind each wing tip resembles horizontal cyclones trailing behind the wings. Each vortex rotates in a direction towards the path that the plane has taken, or rather in towards the plane
 
 
 [3]
 The facts of the Furumizo case were set forth in the district court's opinion in Furumizo v. United States, 245 F.Supp. 981 (D.Haw.1965), and were not restated in the opinion of this court. 381 F.2d 965, 967
 
 
 [4]
 The district court did not make any finding as to whether VFR (visual flight rules) conditions existed on April 4, 1971, nor does this court. However, appellee Miller admits that there was visibility of 80 miles (Appellee Miller's brief at 4)