Joan M. SPAULDING et al., Plaintiffs-Appellants,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 25315.

United States Court of Appeals, Ninth Circuit.

Jan. 28, 1972.

James G. Butler (argued), Los Angeles Cal., for plaintiffs-appellants.

Leonard Schaitman (argued), Morton Hollander, Dept. of Justice, William D. Ruckelshaus, Asst. Atty. Gen., Lawrence J. Galardi, Asst. Chief, Torts Section, Washington, D. C., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for defendants-appellees.

Before MERRILL, TRASK and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Joan M. Spaulding, as administratrix of the estate of Jack E. Spaulding, and Curtis L. Guss, as administrator of the estate of John B. Michelmore sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., for the alleged negligence of certain United States employees. They appeal a District Court judgment for the United States.[1] We affirm.

Dorman D. Michelmore (the pilot) owned a twin-engine Beechcraft airplane, which he flew to Houston, Texas, en route to the Sebring Auto Race in Florida. With him were his son, John B. Michelmore, and Jack E. Spaulding, neither of whom were licensed pilots.

---

1. *Sub nom.* Michelmore v. United States, 299 F.Supp. 1116 (C.D., Calif., 1969).

The pilot held a private license certificate, but was limited to flying under visual flight conditions.[2] The Michelmore party returned to Houston from Sebring by commercial airplane, and the pilot filed a FVFR flight plan according to visual flight rules, destination El Paso, Texas, at 10:20 a. m. on March 29, 1965.[3] The flight plan was accepted without comment by the Houston Flight Service Station, and the pilot was given the latest available weather information. He was told that Houston weather was adequate for a VFR departure, but that low ceilings and overcast conditions existed in and were forecast over virtually the entire flight area between Houston and El Paso, and that a cold front northwest of Austin was expected to cross his flight path.

The aircraft was cleared for and did take off at 10:46. At 10:50 the pilot established radio contact with Houston to activate his flight plan and receive further weather information. He was told that thunderstorms would be moving into his flight path. Continuing his flight, the pilot established radio contact with the Austin Flight Service Station at 11:28, reporting that he was in VFR conditions. Moments later, he radioed that he had "lost VFR." On instructions from the Austin Flight Service Station, he contacted the Austin Approach Control and told them he was no longer VFR, he was not instrument rated although he could fly on autopilot, and he wanted to "get down." Austin Approach Control directed him to make a turn, which established radar contact with the plane. The pilot was told to descend and reported shortly thereafter that he was "descending very rapidly." Within seconds, Austin lost radio contact with the aircraft, which disappeared from the radar screen. Subsequently, it was learned that the plane crashed at approximately 11:29. All three occupants were killed.

The administrators of the estates of the two passengers then sued the United States,[4] alleging that "the negligence and wanton and reckless misconduct of employees of the . . . United States . . . in failing to adequately warn, assist, advise, instruct, control, manage and direct said Dorman D. Michelmore while he was airborne . . ." caused the crash. After a trial lasting thirty-six days, the District Court entered detailed findings of fact, supplementing its earlier judgment for the United States, holding that (1) no federal employee was guilty of "any negligence;" (2) in an emergency, liability attaches only "if the resulting injury could reasonably have been anticipated or reasonably foreseen," and such was not the case here; (3) no acts or omissions by any Government employee were the proximate cause of the crash; and (4) the sole proximate cause of the crash was the pilot's own negligence.

In reviewing such determinations of fact, we are limited by Fed.R.Civ.P. 52(a): "Findings of fact [of the District Court] shall not be set aside unless clearly erroneous . . ." *See* Cataphote Corp. v. De Soto Chemical Coatings, Inc., 356 F.2d 24, 26 (9th Cir., 1966). There is ample evidence in this record to support the District Court's findings.

In order to recover it was necessary for appellants to prove by a preponderance of the evidence that an employee of the United States was negli-

---

2. As such the pilot was a VFR pilot as opposed to an instrument flight rated pilot, an IFR. A VFR pilot may operate an aircraft only when ground visibility is at least three miles. 14 C.F.R. § 91.105.

3. All the events described occurred on March 29, 1965. All times are Central Standard Time and a. m.

4. Hilde E. Michelmore, administratrix of the estate of the pilot, also sued the United States. She did not appeal the judgment entered against her.

gent within the scope of his employment, and that his negligence was a proximate cause of the crash—that the United States breached a duty owed to the passengers or the pilot in the airplane. Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W.2d 944 (Tex.Com.App., 1935).[5] After establishing such breach of duty owed to the decedents, the appellants had to prove that the breach of duty was a proximate cause of the crash[6] by demonstrating first, that the breach of duty was a substantial factor in bringing about the crash, and second, that the crash was the foreseeable consequence of the breach. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951). Texas law requires only that "a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily the precise actual injury, but some like injury . . . ." Texas & Pacific Railway Co. v. Bigham, 90 Tex. 223, 227, 38 S.W. 162, 164 (1896). *Accord,* Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847 (1939); Annot., 100 A.L.R.2d 942, 974–975 (1965).

■■■ While general negligence law applies to airplane tort cases, United States v. Schultetus, 277 F.2d 322, 325

(5th Cir., 1960), the standard of due care is concurrent, resting upon both the airplane pilot and ground aviation personnel. Both are responsible for the safe conduct of the aircraft. United States v. Miller, 303 F.2d 703 (9th Cir., 1962). Thus, both are responsible for the safety of airplane passengers. The pilot is in command of his aircraft. He is directly responsible and has final authority for its operation. See 14 C.F.R. § 91.3(a). However, before the pilot is held legally responsible for his aircraft, he must know those facts which are material to the operation of his plane.

■■ An important source of this information is tower personnel, air traffic controllers, and service station personnel. The air traffic controller is required to give all information and warnings specified in his manuals,[7] and in certain situations he must give warnings beyond the manuals.[8] This duty to warn is based on the simple tort principle that once the Government has assumed a function or service, it is liable for negligent performance.[9]

■■ The controller's duty to warn does not, however, relieve the pilot of his primary duty and responsibility. The pilot has a continuing duty to be

---

5. Since the alleged tort occurred in Texas, Texas law controls, 28 U.S.C. § 1346 (b).

6. Appellants concede that the pilot was negligent, but they contend that negligence on the part of the federal employees who provided information and directions to the pilot was a contributing and proximate cause of the crash.

7. Gill v. United States, 429 F.2d 1072 (5th Cir., 1970); Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2nd Cir., 1967); Stork v. United States, 278 F. Supp. 869 (S.D.Calif., 1967); aff'd 430 F.2d 1104 (9th Cir., 1970).

8. For example, warnings beyond those prescribed by the aviation manuals must be given when danger is immediate and

extreme, United States v. Furumizo, 381 F.2d 965 (9th Cir., 1967); when danger is known only to federal personnel, United Air Lines, Inc. v. Wiener, 335 F. 2d 379 (9th Cir., 1964); when the controller is better qualified than the pilot to evaluate the actual situation, Hartz v. United States, 387 F.2d 870 (5th Cir., 1968); or when the controller is able to gather more information or make more accurate observations than the pilot. Hochrein v. United States, 238 F.Supp. 317 (E.D.Pa., 1965).

9. Indian Towing Co., Inc. v. United States, 350 U.S. 61, 64–65, 76 S.Ct. 122, 100 L.Ed. 48 (1955); American Airlines, Inc. v. United States, 418 F.2d 180, 192 (5th Cir., 1969); see generally, Annot., 86 A.L.R.2d 384 (1962).

aware of danger when he can gather adequate information with his own eyes and instruments.[10] It is negligence on his part to fail to yield the right of way when he should as in *Miller, supra,* or to land or take off in an obvious thunderstorm.[11] A pilot cannot ignore the weather information he has been given or disregard the weather conditions he sees around him.[12]

Within this legal context, appellants argue that the federal employees in the "air traffic control service [have] a continuing duty not only to communicate weather information and other pertinent data concerning the safety of the flight but have a continuing duty both to restrain a pilot from taking off into a hazardous weather condition and to deter him from proceeding with the flight once airborne if the dangers to the passengers on board are such that any reasonably prudent person would do so." The District Court held that no federal employee had breached any duty owed to the pilot or his passengers. We agree.

■ 1. Houston Flight Service Station. Appellants contend that Houston Flight Service Station personnel were negligent in failing to urge the pilot not to take off and in providing weather information before and during the flight. These personnel had no duty to quiz the pilot on his qualifications and flight plan, or to offer a gratuitous opinion that he should delay his flight. In situations where judgment is exercisable, the "judgment as to whether and when weather conditions permit take-off is for the pilot . . . " Stork v. United States, 430 F.2d 1104, 1107 (9th Cir., 1970). Weather conditions at Houston

were VFR. The take off was neither forbidden by regulation as in *Stork,* nor inadvisable. The flight service station provided an information service. Its personnel had no duty to comment upon the information they delivered.

■ There was, of course, a duty to provide accurate weather information, and this duty was not breached by the Houston Flight Service personnel. When the pilot filed his flight plan, he was given all available weather information. He was specifically told to expect a cold front to cross his flight path. When he was airborne, he again received all available weather information, including a specific forecast of thunderstorms, which he could personally confirm with his own eyes. His decision to continue his flight was his own decision based on accurate weather information. *Compare* Gill v. United States, 429 F.2d 1072 (5th Cir., 1970).

■ 2. Austin Flight Service Station. Appellants urge that Austin Flight Service Station personnel were negligent in providing weather information and in not urging the pilot to return to Houston. Again, the pilot received the substance of all weather information he required. It is not negligence not to repeat information already accurately given. Somlo v. United States, 416 F.2d 640, 646 (7th Cir., 1969). By the time the pilot contacted Austin, the thunderstorms were apparent to him. He did not have to be warned of that danger.

Nor did Austin Flight Service Station have any duty to direct the pilot to make a 180° turn to return to Houston. The

---

10. *Compare* United States v. Schultetus, 277 F.2d 322 (5th Cir., 1960) and United States v. Miller, 303 F.2d 703 (9th Cir., 1962) *with* Cattaro v. Northwest Airlines, Inc., 236 F.Supp. 889 (E.D., Va., 1964).

11. American Airlines, *supra* n. 9 (landing) ; Reidinger v. Trans World Airlines,

Inc., 329 F.Supp. 487 (E.D., Ky., 1971), appeal pending (landing) ; Neff v. United States, 136 U.S.App.D.C. 273, 420 F.2d 115 (1969) (take off).

12. *See* Somlo v. United States, 274 F.Supp. 827 (N.D.Ill., 1967) aff'd 416 F.2d 640 (7th Cir., 1969) and Annot., 35 A.L.R.3d 614 (1971).

pilot gave no indication that he was in trouble; he radioed that VFR conditions were available above and around him.

■ 3. Austin Approach Control. After notifying Austin Approach Control that he wanted to get down, the pilot was told to execute certain maneuvers, which appellants now assert were negligently directed. In such an emergency situation Austin Approach Control was required to exercise only ordinary care to avoid injury to the pilot and his passengers. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 (1956). The emergency here existed for both the pilot, who had flown into a thunderstorm, and for Approach Control, which had a blind plane flying in its air traffic area in which were other aircraft. There is ample evidence that the Austin approach controller gave instructions to the pilot which could be reasonably and safely accomplished and which were reasonably calculated to provide assistance to the pilot.

■ The record demonstrates that no federal employee in contact with the pilot violated any duty owed to him or to his passengers. The pilot received accurate and complete weather information. When he declared an emergency, he received competent assistance, reasonably calculated to aid him. In addition, assuming that any or all of the federal employees who were in contact with the pilot were negligent, appellants have not demonstrated that this negligence was the proximate cause of the crash. Speculation does not sustain the plaintiff's burden of proof.[13] Appellants can do no more than speculate that any negligence by federal employees was a sole or contributing proximate cause to the crash.

After a careful review of the record, we are convinced that the findings of the District Court are not clearly erroneous.

Affirmed.

13. Swan v. Kroger Co., 452 S.W.2d 793, 796 (Tex.Civ.App., 1970); Ussery v. Ewell Hodges, Inc., 417 S.W.2d 332, 335

(Tex.Civ.App., 1967); Wenzel v. United States, 419 F.2d 260, 263 (3rd Cir., 1969).