497 F.2d 370
 Alec S. HAMILTON, Jr., a minor, By and Through his guardian
Ad Litem, Ida Laverne Hamilton, Ida Laverne Hamilton,
Individually and as Executrix of the Estate of Alec Sydney
Hamilton, Deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
James P. Van GILDER, Plaintiff-Appellant,
v.
UNITED STATES of America, a sovereign nation, Defendant-Appellee.
Debra Ann WHITLOW, a minor, et al., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
LEWIS & CLARK TRADING COMPANY and H. J. Stockman, dba Lewis
& Clark Trading Company, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 72-1346, 72-1384, 72-1335 and 72-1349.
 United States Court of Appeals, Ninth Circuit.
 May 9, 1974.
 
 Ned Good (argued), Los Angeles, Cal., for plaintiffs- appellants in 72-1335.
 Albert R. Abramson, of Hoberg, Finger, Brown & Abramson, San Francisco, Cal., for plaintiff-appellant in 72-1346.
 Gilmore F. Diekmann, Jr. (argued), Edward H. Cummings, of Bronson, Bronson & McKinnon, San Francisco, Cal., Ropers, Majewski & Phelps, Redwood City, Cal., for plaintiff-appellant in 72-1349.
 Edward M. Digardi (argued), of Nichols, Williams, Morgan & Digardi, Bryant M. Bennett, of Bennett, Van De Poel, Campbell & Ginder, Oakland, Cal., for plaintiff-appellant in 72-1384.
 Raymond D. Battocchi (argued), Morton Hollander, Kathryn H. Baldwin, Civil Div., Dept. of Justice, Washington, D.C., c., James L. Browning, Jr., U.S. Atty., William B. Spohn, Asst. U.S. Atty., E. Grey Lewis, Acting Asst. Atty. Gen., San Francisco, Cal., for defendant-appellee.
 Before KOELSCH, DUNIWAY and KILKENNY, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 OPINION
 
 1
 These four suits were brought against the United States under the Federal Tort Claims Act, 28 U.S.C. 1346(b) and 2671 et esq., as the result of a February 17, 1967, mid-air collision at Oakland Airport between two aircraft, a Cessna 310 and a Piper Apache. Nos. 72-1346 and 72-1335 are wrongful death actions brought by the representatives of the two pilots of the Cessna, who were killed in the collision. No. 72-1384 is a personal injury action brought by the pilot of the Apache, who was injured in the collision. No. 72-1349 is an action for property damages brought by the purported owners of the Cessna.
 
 
 2
 In all four actions the plaintiffs' claims were based on allegations of negligence on the part of Federal Aviation Agency (FAA) employees in the air traffic control tower at Oakland Airport. The cases were consolidated for trial on the issue of liability, the damages issues to be heard at a later date if necessary. After a 16-day trial, the district court determined that the air traffic controllers were not negligent and that the proximate cause of the accident was the negligence of the pilots of each aircraft. We affirm.
 
 
 3
 The facts, as found by the district court, are these:
 
 
 4
 Oakland Airport has two parallel runways, 27 right (27R) and 27 left (27L), which run east to west. At the time in question all aircraft were landing at the east threshold of the runways and taking moderate to heavy. The air traffic control moderate to heavy. The air traffoc cpmtrp; tower, which is located approximately one mile south of runways 27 near their eastern ends, was manned by Mr. Story, an experienced air traffic controller who had recently transferred to the Oakland Airport. Mr. McCready, an experienced controller who had been working at the Oakland Airport for ten months prior to the accident, was monitoring the activities of Story, who was a trainee.[1]
 
 
 5
 At the time of the accident, flight visibility was approximately four miles, and Visual Flight Rules (VFR) were in effect. Under VFR conditions (also called 'see and be seen' or 'see and avoid' conditions), as opposed to Instrument Flight Rules (IFR), pilots navigate aircraft and execute takeoffs and landings visually and not by instruments.[2] Because of haze and smoke toward the east, and because of the outlying hills, the air traffic controllers' ability to see aircraft approaching from the east was decreased.
 
 
 6
 At Oakland Airport all aircraft which have established radio communication with the tower receive and transmit their communications on the same frequency. Under 14 C.F.R. 91.87(b), all pilots flying within an airport traffic area must maintain two-way radio contact with the control tower. This area is defined as the airspace below 2,000 feet within a circle having a horizontal radius of five miles from the geographical center of the airport. Thus, the pilots of the Cessna and the Apache could hear all the transmissions between the tower and all aircraft within the airport traffic area.
 
 
 7
 At 2:18:45,[3] the Cessna radioed the tower that it was over Castro Valley, which is approximately eight miles east from the airport, and stated an intention to land. Story authorized the Cessna to make a straight-in approach to runway 27R, and further instructed it to report to the tower on 'two mile final,' i.e., when it was two miles from the thresh-old of the runway. The Cessna acknowledged receipt of this instruction and Story then communicated with at least eleven other aircraft during the next four and one-half minutes. After four and one-half minutes, the Cessna not having reported as expected, and at 2:23:18, Story called the Cessna and asked its position. He received no answer. At 2:23:25, seven seconds later, Story again called the Cessna and again received no reply. At 2:23:46, Story called the Cessna and for a third time received no answer.
 
 
 8
 Two seconds later, at 2:23:48, appellant Van Gilder, the pilot of the Apache, contacted the tower, and six seconds later radioed that he was '5 DME miles from the airport on the two seven right localizer.'[4] At 2:24:20, the tower authorized the Apache to continue on its straight-in approach for runway 27R, and further instructed it to report 'crossing the freeway on the two mile final.'[5]
 
 
 9
 At 2:25:06, over six minutes after it had first reported to the tower, within which time it would normally have traveled about 12 miles, the Cessna finally radioed to report that it was coming up on the freeway towards runway 27R. Story authorized the Cessna to continue its straight-in approach. Van Gilder, the Apache pilot, not only heard this communication over his radio, but was also expressly informed of it eleven seconds later, when the tower told him that a Cessna was reported approaching the freeway on a two mile final.
 
 
 10
 In the next thirty seconds, Story communicated with two other aircraft. One of these, 'four nine Juliette' (49J),[6] was travelling due east on a line parallel to and south of runway 27L, and Story cleared it for a 'touch and go' landing[7] on 27L.[8]
 
 
 11
 Although Van Gilder, the Apache pilot, had been told to radio the tower when he crossed the freeway two miles from the threshold of the runway, he did not do so, but called the tower at 2:25:50, stating that he was 'only about a mile from the end of the runway. I don't have the Cessna in sight. He must be either right under me or below me or behind me.' At this point, both Story and McCready, his monitor, looked to the east and for the first time spotted one of the planes. At 2:26:04, Story asked zero eight delta whether he was a twin Cessna; the Cessna replied affirmatively at 2:26:07.
 
 
 12
 McCready then immediately spotted the Apache and assumed control from Story. He also saw the Cessna. At this point, 49J was about to make a left turn and execute a touch and go landing on 27L, while the Cessna and Apache were approaching 27R to land.[9] From McCready's perspective, the Apache appeared to be behind, above, and to the right of the Cessna. Within three seconds, at 2:26:10, he ordered 49J to make a right 360 degree turn, but then observed that it had already begun to make a left turn. Accordingly, at 2:26:13, he instructed 49J to continue its left 360 degree turn, cleared the Apache to land on 27R and ordered the Cessna either to land on 27L or go around.[10]
 
 
 13
 McCready then observed the Cessna begin to make what appeared to be a left turn, concluded that the two planes would land on the respective runways, and therefore turned his attention to two other planes in the traffic pattern. Shortly thereafter the Cessna and Apache collided, with the Apache apparently descending on to the top of the Cessna.
 
 
 14
 The district court found that the air traffic controllers were not negligent in the performance of their duties, and, moreover, that the proximate cause of the accident was the negligence of the pilots of the two planes. Because we conclude that these findings are not clearly erroneous, we affirm the judgment of the district court. Fed.R.Civ.P. 52(a).
 
 I. Government Negligence
 
 15
 Appellants argue first that air traffic controllers owe pilots a duty to exercise due care to avoid mid-air collisions regardless of weather and flight conditions. We agree with this proposition, but it tells only half of the story. According to the regulations promulgated under the Federal Aviation Act of 1958, 49 U.S.C. 1301 et seq., 'the pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of the aircraft.' 14 C.F.R. 91.3(a). Thus, the duty to exercise due care is a concurrent one, resting on both the control tower personnel and the pilots. Spaulding v. United States, 9 Cir., 1972, 455 F.2d 222, 226; United States v. Miller, 9 Cir., 1962, 303 F.2d 703, 711. Moreover, under VFR conditions, ultimate responsibility for the safe operation of aircraft rests with the pilots, regardless of the air traffic clearance. Tilley v. United States, 4 Cir., 1967, 375 F.2d 678, 682-684; United Air Lines, Inc. v. Wiener, 9 Cir., 1964, 335 F.2d 379, 389; United States v. Miller, supra, 303 F.2d at 710; United States v. Schultetus, 5 Cir., 1960, 277 F.2d 322, 328.
 
 
 16
 Appellants next argue that the air traffic controllers were negligent in three ways:
 
 
 17
 1. They placed the two aircraft in a position of peril by authorizing two simultaneous straight-in approaches.
 
 
 18
 2. They failed to warn the aircraft that an emergency situation existed and failed to inform each aircraft of the other's position.
 
 
 19
 3. They gave instructions which directly caused a collision. We will consider these arguments seriatim.
 
 
 20
 Appellants' first argument has two parts. First, the control tower should have authorized a 'pattern' approach rather than a 'straight-in' approach. Second, the control tower negligently authorized two simultaneous straight-in approaches.
 
 
 21
 A pattern approach requires the pilot to parallel the runway in the opposite direction from his landing (along the down-wind leg),[11] make a 90 degree turn toward the runway (along the base leg), and then make another 90 degree turn to approach the runway for a landing. Such an approach is less dangerous than a straight-in or direct approach because it forces the pilot to make two turns, during which he can observe conflicting traffic. On a straight-in approach a pilot, whose view is partially obstructed by his plane, will normally make clearing turns only if he has reason to believe that potentially conflicting traffic is in his vicinity.
 
 
 22
 The trial judge necessarily found that the mere act of authorizing straight-in approaches in this situation was not negligence. This finding is not clearly erroneous. Straight-in approaches are allowed at airports with control towers, and the question of whether a controller is negligent in deciding to authorize a straight-in approach depends on the facts of the case. To do so is not negligence as a matter of law.
 
 
 23
 Appellants then argue that the controller was negligent in authorizing two simultaneous straight-in approaches on the same runway. We cannot agree. Although the controller did authorize each aircraft to make a straight-in approach on runway 27R, he did not know, and had no reason to believe the planes would approach the runway simultaneously. The Cessna reported itself about eight miles east of the airport at 2:18:45. At a speed of 120 miles an hour, it should have arrived at two mile final at about 2:21:45. The Apache reported itself about five miles east of the airport at 2:23:48. At the same speed, it should have arrived at two mile final at about 2:25:18-- some three minutes 23 second behind the Cessna-- or over six miles behind it. When the controller was apprised of the emergency, which, as the court found, had been caused by the pilots' negligence, he did not authorize simultaneous approaches on the same runway, but rather cleared the Apache to land on 27R and authorized the Cessna to land on 27L or go around and he saw the Cessna start to turn left, as if heading for 27L. Appellants' reliance on Eastern Air Lines v. Union Trust Co., 1955, 95 U.S.App.D.C. 189, 221 F.2d 62, is therefore misplaced; the controller in that case did authorize two aircraft to land on the same runway at the same time. Id. at 79.
 
 
 24
 Appellants next argue that the controllers negligently failed to warn the aircraft of an emergency situation and negligently failed to inform each aircraft of the other's position. This argument is wholly without merit. As discussed infra, the pilot's own negligence caused the emergency to develop at 2:25:50. At 2:26:07, the controller had both aircraft in view and he acted immediately; within three seconds he started to give instructions to try to extricate the aircraft from the dangerous predicament they had created. Appellants, in effect, are urging us to hold that when an emergency develops, a controller is negligent if he does not warn the aircraft involved. Clearly a controller is under an obligation to act when he has reason to know that an emergency situation exists. Furumizo v. United States, 9 Cir., 1967, 381 F.2d 965, 968. Moreover, when there is sufficient time to do so, the controller must warn of dangers reasonably apparent to him. American Airlines, Inc. v. United States, 5 Cir., 1969, 418 F.2d 180, 197; Eastern Air Lines v. Union Trust Co., supra.[12] Ideally, the controller should both warn of the danger and give instructions to prevent an accident. But when, as here, the controller must make a split-second decision, it is more important that he try to avoid the collision by giving instructions than warn the pilots that an emergency exists. The controller here did just that, and the court's finding that his failure to warn did not constitute negligence is not clearly erroneous.[13]
 
 
 25
 Nor was the controller negligent in failing to inform each aircraft of the other's position. No case has been brought to our attention, nor have we been able to find one, which holds that under VFR conditions a controller is under a duty to inform aircraft in the same vicinity of each other's position. Such a holding would be wholly unwarranted here. Under the radio system in use at Oakland the Cessna and the Apache could hear all communications between the tower and the other aircraft. Thus, the Cessna pilots were put on notice at 2:23:54 that an Apache would be approaching runway 27R from the east, and the Apache was put on notice at 2:25:06 that a Cessna was coming up on the freeway. Moreover, even though under VFR conditions a controller is not under a duty to inform aircraft of each other's position, the controller nevertheless expressly informed the Apache at 2:25:17 that the Cessna had just reported approaching the freeway.
 
 
 26
 Appellant's last argument concerning the tower's negligence is that the controller's instructions to the Apache and the Cessna at 2:26:13 were negligent and caused the collision. From the controller's perspective, it appeared that the Apache was above, behind, and to the right of the Cessna. He therefore cleared the Apache to land on 27R and authorized the Cessna to land on 27L or go around. There was, however, testimony at the trial that the Apache was above, behind, and to the left of the Cessna, and that a plane below and in front of another aircraft should never be told to go around while the upper aircraft is told to land. The appellees' experts, on the other hand, testified that the instructions given were proper and followed the usual and common practice. The district court's finding that the tower was not negligent was supported by substantial evidence and is not clearly erroneous.
 
 
 27
 Moreover, the controller was not necessarily negligent when, after giving the instructions at 2:26:13 and observing the Cessna begin to make what was seen by him to be a left turn, he turned his attention to other aircraft in the traffic pattern. Once the controller had reason to believe that his instructions were being carried out, he would have been delerlict in his duties if he had not turned his attention to other aircraft. An air traffic controller 'is not supposed to give his attention to any one aircraft in the control zone if other aircraft are present. All aircraft within the control zone should have the controller's attention.' Franklin v. United States, 7 Cir., 1965, 342 F.2d 581, 585.
 
 II. Pilot Negligence
 
 28
 We also find not clearly erroneous the district court's conclusion that the pilots' negligence was the proximate cause of the collision. The district court found the Cessna pilots negligent in several respects.
 
 
 29
 1. The pilots violated 14 C.F.R. 91.65(a), which prohibits the operation of 'an aircraft so close to another aircraft as to create a collision hazard.' Appellants do not challenge this finding as clearly erroneous, which it is not, but argue instead, citing Hartz v. United States, 5 Cir., 1968, 387 F.2d 870, 873, that before a pilot can be held to have violated this provision, knowledge of the proximity of the other aircraft must be shown or presumed. We agree with the appellants' argument, but its premise is here present. Knowledge of the proximity of the Apache is presumed, since the Apache twice called in to the tower to report its position.[14]
 
 
 30
 2. The pilots failed to acknowledge three separate requests for a location report from the tower. Appellants argue that when the Cessna originally reported from Castro Valley at 2:18:45, the controller instructed it to conduct a straight-in approach and report on two mile final, and that because the Cessna did report at the two mile final, it was not negligent in failing to respond to the three requests for a location report. This argument borders on the irresponsible; no controller can properly perform his function if aircraft do not comply with his instructions to radio location reports. When the controller called the Cessna, it should already have been at two mile final, but was not there.
 
 
 31
 3. The Cessna pilots either failed to monitor their radio or failed to pay attention to the location report from the Apache at 2:23:54. This report put the Cessna on notice that an Apache would be approaching runway 27R from the east. As in United States v. Miller, supra, the pilots then had a duty 'to look thoroughly and diligently in the area in which the (Apache) was flying' and 'should have made a thorough surveillance of that area (their) prime concern.' 303 F.2d at 708.[15]
 
 
 32
 The district court also found 'some valid and credible evidence that the (Cessna) probably executed a 360 degrees turn just prior to the accident,' a maneuver that might explain its late arrival at two mile final, and was therefore negligent in several additional respects. As to Van Gilder, the pilot of the Apache, the district court also found him to be negligent in violating 14 C.F.R. 91.65(a), not observing the Cessna after he approached the control zone, and not having taken evasive action once he concluded that the Cessna was right under him or right behind him. As above, none of these findings was clearly erroneous.[16]
 
 
 33
 Affirmed.
 
 KILKENNY, Circuit Judge (dissenting):
 
 34
 Even though Judge Duniway has squeezed from the record every gram of evidence which might support affirmance, I remain unconvinced. The record is undisputed on the salient facts and we are in as good a position as the trial judge to apply the law to those facts. I would hold that the FAA employees in the Air Traffic Control Tower were negligent as a matter of law. Had the control tower been manned by McCready, an experienced controller, rather than Story, who had experience, but was not familiar with the Oakland airport problems, the accident would not have occurred. The record is clear that the tower created a death trap when it cleared the planes to land on the same runway at approximately the same time. Those in charge of airport towers, to whose eyes and ears are committed the lives of millions of passengers, let alone the lives of thousands of aircraft personnel, must be held to an exceptionally high degree of care.
 
 
 35
 It is well established that the degree of care necessarily increases in proportion to the degree of risk involved. Advising incoming pilots at a busy airport is a highly dangerous and mighty risky business.
 
 
 36
 Having obtained clearances, each of the pilots was entitled to rely on the tower invitation and proceed to land. Not having eyes in the seat of his pants, nor in the top or back of his head, neither pilot had any way of knowing, other than through the tower, that the other plane was in the immediate vicinity.
 
 
 37
 I would hold: (1) that the tower operator was negligent as a matter of law; (2) that the pilots' conduct was reasonable and prudent as a matter of law; and (3) in any event, that the findings of the trial judge are clearly erroneous.
 
 
 
 [1]
 When an air traffic controller transfers from one airport to another, he usually serves in a 'trainee' status for a few months at the new airport until he becomes familiar with its procedures and particularities
 
 
 [2]
 Under 14 C.F.R. 91.105, when flight visibility is at least three miles pilots may fly under VFR conditions. When visibility is less than three miles, pilots must fly under IFR conditions (14 C.F.R. 1.1, 91.105); flight plans must be filed prior to flight and aircraft are flown primarily by instruments
 
 
 [3]
 All times are P.M. 2:18:45 means 18 minutes and 45 seconds after 2:00 P.M
 
 
 [4]
 DME miles are nautical miles, and the 27R localizer is a diverging electronic signal, the centerline of which may be visualized as an extension of the runway 27R centerline. Thus the Apache was on the outer border of the traffic control zone, approximately four to five statute miles from the threshold of runway 27R
 
 
 [5]
 Since the Nimitz Freeway in Oakland intersects a straight path to runway 27R two miles from the runway threshold, this instruction is synonymous to an instruction on 'two mile final,' supra
 
 
 [6]
 In communications between towers and aircraft planes are generally referred to by the last three symbols of their registration numbers. For example, the Cessna, whose registration number was N3608D, was referred to as 'zero eight delta' (08D); the Apache is 'four three papa (43P)
 
 
 [7]
 In a 'touch and go' landing, the pilot allows the wheels of the plane to touch the runway and then applies full power so that the plane immediately takes off; it is a maneuver commonly used to practice landings and takeoffs
 
 
 [8]
 It is a common and permissible practice at Oakland Airport to allow one plane to land on runway 27R at the same time another lands on 27L. The two runways are 1,000 feet apart
 
 
 [9]
 Only 49J had received a clearance to land on 27L; neither the Cessna nor the Apache had been cleared to land
 
 
 [10]
 When a pilot 'goes around,' he applies power to the plane before landing so that it ascends over the runway and reenters the rectangular traffic pattern
 
 
 [11]
 See United States v. Miller, supra, 303 F2d at 705, n. 5
 
 
 [12]
 For example, in Eastern Air Lines, the district court concluded that "for an adequate period of time before the collision, both planes were visible to the control tower personnel who observed said planes, . . . and said personnel had an adequate opportunity to give timely warnings and instructions to each plane." 221 F.2d at 79
 
 
 [13]
 This is not to say, however, that a controller must never warn. When a controller is aware of dangerous conditions, his failure either to warn or to give instructions, i.e., his failure to act at all, may constitute negligence. Furumizo v. United States, supra; Stock v. United States, 9 Cir., 1970, 430 F.2d 1104; Ingham v. Eastern Air Lines, Inc., 2 Cir., 1967, 373 F.2d 227, 235
 
 
 [14]
 Nor do we disagree with Hartz. The court there held that a pilot on the runway studying his cockpit instrument panel and awaiting take-off instructions is less able to judge movement, time and distance on an airfield than a controller stationed high above the field with a commanding view of all the aircraft upon and in the vicinity of the airport. The controller therefore had a duty not only to warn a small aircraft of the possible danger of wing tip vortex, but also to delay take-off clearance of the small plane for such period as was reasonably necessary to permit such turbulence from the large plane to dissipate
 
 
 [15]
 The district court also stated that the Cessna pilots 'may have' violated 14 C.F.R. 91.67(f) by cutting in front of the Apache. We do not consider this statement to be a finding of negligence, and therefore decline to review it
 
 
 [16]
 We decline to rule whether the negligence of the Cessna pilots can be attributed to the Cessna's owners. That question was not tried. The district court's findings and judgment were limited to the issue of government liability, and no findings were even made as to who owned the Cessna