Yvonne ELLEN, Personal Representative of the Estate of Lynette Franco, Dec'd, Plaintiff—Appellant,

v.

UNITED STATES of America; Federal Aviation Agency, Defendants—Appellees.

Yvonne Ellen, Personal Representative of the Estate of Lynette Franco, Dec'd, Plaintiff—Appellant,

v.

United States of America; Federal Aviation Agency, Defendants—Appellees.

Nos. 00–55989, 00–56269.

D.C. No. CV–98–00273–JNK/LSP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2001.

Decided Feb. 22, 2002.

Before HALL, KOZINSKI and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Yvonne Ellen appeals the district court's grant of a motion to dismiss claims related to the non-installation of an Emergency Obstruction Video Map ("EOVM") as well as its judgment on her remaining tort claims relating to the actions of Air Traffic Control ("ATC") and the award of costs. Ellen sued the FAA under the Federal Tort Claims Act (the "FTCA") alleging negligence in connection with an air crash in which her daughter was killed. The district court dismissed all claims related to the EOVM, finding that the court lacked jurisdiction under the discretionary function exception to the FTCA. The district court also awarded judgment to the United States on the remaining issues, finding that no traffic controller had breached his duty of care. We affirm the district court as to each of these issues.

## I. The EOVM

Ellen contends that the district court erred in holding that the discretionary function exception to the FTCA barred her claims regarding the FAA's failure to install an EOVM.[1]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. We note in passing that Ellen has not stated on appeal the basis for her contention that the FTCA would grant jurisdiction over her EOVM claim if it were not barred by the discretionary function exception. At times, her FTCA claim appears to read as if based on a negligence per se theory that would bootstrap liability on violation of a federal statute. Such an approach would fail to state a claim under the FTCA: "To bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged . . . ." *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir.2001) (citations omitted). However, we need not long be detained by this issue. As with her other FTCA claims the appropriate state law duty may be found in "the simple tort principle that once the Government has assumed a function or service, it is liable for negligent performance." *Spaulding v. United States*, 455 F.2d

The applicability of the discretionary function exception to the FTCA's grant of jurisdiction is determined by a two part test. First, the exception only covers acts that are discretionary in nature. *See Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). This requirement is not satisfied where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* However, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." *United States v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

Second, if the challenged conduct does involve discretion, the court must determine whether it also involves a policy judgment. This second prong involves an objective test. The decision "need not actually be grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). Further, when a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Ellen claims errors in regard to both prongs of the discretionary function test. She first argues that the district court erred because installation of an EOVM was a mandatory requirement of FAA Order 7210.3k. In the alternative, she argues that the decision not to install an EOVM was not a policy decision. We disagree.

■ The mandatory language in the first sentence of paragraph 103(a) is not applicable to facilities such as SoCAL TRACON that are using all of the channels on their video mappers. An EOVM is only required to be installed when a video channel is "available," a term defined by Webster's New Collegiate Dictionary as "present or ready for immediate use." Channels that are currently used for other maps are not ready for immediate use. Further, the language of paragraph 103(b) directly requires the use of discretion in determining how to deal with situations where all channels are in use. By implication, such discretion includes the discretion not to install an EOVM when doing so would be undesireable. There is nothing in the language of 7210.3k suggesting a requirement to install EOVMs in all cases where doing so is technically feasible.

■ The decision not to install an EOVM was also a policy decision. Safety is a quintessential policy issue. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *GATX/Airlog Co. v. United States*, 234 F.3d 1089, 1096–1097 (9th Cir.2000); *Kennewick Irr. Dist. v. United States* 880 F.2d 1018 (9th Cir.1989); *West v. FAA*, 830 F.2d 1044, 1048 (9th Cir.1987). The decision whether to install an EOVM required the FAA to balance the safety benefits of the information provided by the EOVM against both the safety and practical costs of eliminating another map or creating combined maps that could be cluttered and difficult to read. This is precisely the type of decision over which Congress intended to prevent judicial second guessing.

222, 226 (9th Cir.1972). The FAA and its personnel have a assumed a function to perform an emergency assistance service and the

decision whether or not to install an EOVM falls within the scope of that duty.

Ellen alternatively claims that, even if paragraphs 3–103(a) & (b) do not require installation of an EOVM, the latter at least requires consideration of all of the required alternatives. She thus suggests that the district court should have jurisdiction to determine if the failure to do so was negligence. We agree with the district court that such consideration did indeed occur.

## II. Standard of Care

Ellen next contends that the District Court applied the wrong standard of care in assessing the conduct of Controller Rising.[2]

Under the FTCA, the state law that would apply to determine the liability of "a private individual under like circumstances" determines the liability of the government. 28 U.S.C. § 2674. In airplane tort cases in California, "general negligence law applies; however 'the standard of due care is concurrent, resting upon both the airplane pilot and ground aviation personnel.'" *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir.1995) (quoting *Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir.1972)). An air traffic controller's conduct must also be measured against specific duties arising from the Government's assumption of certain functions or services. *See Spaulding*, 455 F.2d at 226. Such duties are described in part in the Air Traffic Control Handbook (the "Handbook"), FAA Order 7110.65J, and include duties to warn of unsafe proximity to terrain and to assist in emergencies. *See id.*

However, while FAA documents may memorialize the functions assumed by that agency, breach of an internal agency man-

ual such as the Handbook raises no automatic presumption of negligence under California law. By California statute, a breach of an existing duty of care is presumed when a person has "violated a statute, ordinance, or regulation of a public entity." Cal. Evid.Code § 669. However, § 669.1 of the California Evidence Code specifies that an internal agency document that is not formally enacted according to the procedures of the Administrative Procedure Act does not qualify as a "statute, ordinance, or regulation" of that agency. *See also Management Activities, Inc. v. United States*, 21 F.Supp.2d 1157, 1176 (C.D.Cal.1998); *McDaniel v. Sunset Manor Co.*, 220 Cal.App.3d 1, 5–6, 269 Cal. Rptr. 196 (1990); *cf. Posey v. State of California*, 180 Cal.App.3d 836, 849, 225 Cal.Rptr. 830 (1986). Thus, while the language of several cases may suggest that air traffic controllers are required to comply with the terms of the Handbook, *see Spaulding*, 455 F.2d at 226; *Armstrong v. United States*, 756 F.2d 1407, 1409 (9th Cir.1985), for the purposes of tort liability, the Handbook merely provides evidence of the services the FAA assumes and of the ATC practices.

 The district court applied the correct standards. Ellen's contention that the district court failed to acknowledge the concurrent duties of pilots and controllers is without merit. While the district court did not specifically discuss the concurrence of pilots' and controllers' duties, it had no need to do so. It held the air traffic controllers to a duty of care in protecting the safety of N738ED to the extent that such safety was dependent on performance of their functions.

---

**2.** We again note that Ellen's appeal at times reads as if to allege violations of duties springing directly out of federal law. As noted above, such a theory does not state a claim under the FTCA, and we thus read her claim as based on the general duty of care as applied to the functions assumed by the FAA.

Likewise, Ellen's claim that the district court failed to recognize that Rising was required to issue low altitude warnings when the pilot already knew he was below the safe altitude also misapprehends the holding of the district court. The court did recognize a duty to provide reasonable warnings based on the FAA's assumed functions, but found that Rising had satisfied it. If this claim is that the district court applied the wrong standard in failing to hold that failure to give low altitude warnings in the language specified in the Handbook is negligence per se, it is foreclosed by Cal. Evid.Code § 669.1.[3]

Ellen's third claim is that the district court applied the wrong standard by failing to recognize that a controller is required to take specific actions in an emergency—namely, to inform a pilot of his options, to again give low altitude alerts using the specified language, to avoid any actions that increase a pilot's workload, and to hand-off other airplanes to coworkers. While these actions all find some supporting language in the Handbook or in case law, *See e.g., Daley v. United States* 792 F.2d 1081, 1085 (11th Cir.1986); *Worthington v. United States* 21 F.3d 399, 403 (11th Cir.1994), they are all simply applications of the reasonableness standard to emergency circumstances. The standard remains reasonableness, while its application varies in light of the increased danger and a controller's duty to render maximal assistance in emergencies. *See Daley,* 792 F.2d at 1085; *see also, Thurston v. United States,* 888 F.Supp. 1100, 1110 (D.Utah 1995). The district court applied the correct standard.

### III. Issues of Fact

Having found that the District Court articulated the correct standards, we also find that it applied those standards to the facts of the case without committing clear error.

### IV. Exclusion of the Radar Plot

Ellen argues that the district court erred by excluding a radar plot of the plane's flight path from evidence and precluding appellant from cross-examining the government's pilot expert, Sparky Imeson, with respect to the plot.

█ The court's refusal to enter the plot in evidence was not an abuse of discretion. Ellen points to nothing in the record showing that counsel laid a proper foundation for the plot's admission. Ellen's argument that the document is an admission against interest is not apposite to the issue of foundation.

Neither did the court abuse its discretion by limiting cross-examination on the chart. This court has said that "the scope and extent of cross-examination of expert witnesses rests in the sound discretion of the trial court and 'is not subject to exception unless wholly arbitrary, unreasonable and abusive, and the examination need not be extended to permit interrogation about collateral, immaterial or irrelevant matters.'" *United States v. 10.48 Acres of Land,* 621 F.2d 338, 340 (9th Cir.1980) (quoting *United States v. 25.02 Acres of Land, Douglas County, Colo.,* 495 F.2d 1398, 1402 (10th Cir.1974)). Imeson stated that he reviewed the map, but did not rely on it or discuss it with the expert from

---

**3.** Ellen points to the case of *Rodriquez v. United States* 823 F.2d 735 (3rd Cir.1987) as support for the principle that failure to use the terminology specified in the Handbook constitutes negligence. That case is distinguishable however, because the air traffic controller at issue was giving a first warning and the language he used was insufficiently urgent to accurately convey the danger faced by the pilot. *Id.* at 741. Thus, the behavior in *Rodriquez* constituted a breach of the standard as correctly formulated.

whom he received it. When questioned about the map at trial, he stated that he did not know what the red dots on the map represented. Thus, while the trial court had latitude to permit counsel to cross-examine Imeson as to how he might interpret the map if he assumed the dots represented the flight-path of the plane, it also had discretion to foreclose this path as immaterial.

## V. Post–Trial Motions

Ellen contends that the district court's judgment was based on knowingly false testimony presented by the United States on the last day of trial. Ellen's complaint is that Rising's testimony that he was generally aware of a saddle between Julian and Mt. Cuyamaca must have been fabricated because it was not mentioned in his deposition. We reject this argument. Though Rising did not directly discuss a "saddle" in his deposition, he did evince awareness of this fact. ER at 73. The court did not, contrary to Ellen's argument, assume that Rising could see the terrain or its position relative to the airplane on his radar maps. The court's conclusion that Rising was trying to direct him to the west and through an area where he knew there to be a saddle was based on Rising's testimony that he knew the plane to be near Julian and that he knew the general terrain of the area. The court did not abuse its discretion in refusing to set aside the judgment.

■ Nor did the district court abuse its discretion in refusing to set aside costs. Under the Federal Rules of Civil Procedure, "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d). Rule 54(d) creates a presumption in favor of awarding costs. *See Ass'n of Mexican–American Educators v. Cal.*, 231 F.3d 572, 592 (9th

Cir.2000) (en banc). This presumption may be overcome by a showing of misconduct or other factors that make a case "extraordinary" and the awarding of costs "inappropriate or inequitable." *Id.* Ellen has made no such showing.

For the foregoing reasons, the district court's rulings are AFFIRMED.